```
            UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF NEW YORK

------------------------------X
                              :
UNITED STATES OF AMERICA,     :
                              :      98-CR-721 (FB)
          v.                  :
                              :      October 10, 2000
LAITH NAKLI,                  :
                              :      Brooklyn, New York
            Defendant.        :
                              :
------------------------------X


          TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
           BEFORE THE HONORABLE FREDERIC BLOCK
              UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:           LORETTA LYNCH, ESQ.
                              UNITED STATES ATTORNEY
                              BY: THOMAS SEIGAL, ESQ.
                              ASSISTANT U.S. ATTORNEY
                              271 Cadman Plaza East
                              Brooklyn, New York  11201



For the Defendant:            VALERIE AMSTERDAM, ESQ.




Audio Operator:               JANET HAMILTON


Court Transcriber:            ARIA TRANSCRIPTIONS
                              c/o Elizabeth Barron
                              102 Sparrow Ridge Road
                              Carmel, NY 10512
                              (845) 260-1377




Proceedings recorded by electronic sound recording,
transcript produced by transcription service
```

Case 1:26-cv-01515-FB-PK    Document 1-8    Filed 03/14/26    Page 2 of 19 PageID #: 86
Case 1:98-cr-00721-FB    Document 72    Filed 09/20/11    Page 2 of 19 PageID #: 36

2

THE CLERK:  Criminal cause for sentencing, United States of America v. Laith Nakli.

I'd ask the parties if you would please step forward and state your appearances for the record.

MS. AMSTERDAM:  Good afternoon, your Honor.

THE COURT:  Good afternoon.

MR. SEIGAL:  Good afternoon, your Honor.  Thomas Seigal for the government.

THE COURT:  Mr. Seigal, how are you?

MR. SEIGAL:  I'm fine, Judge.  How are you?

THE COURT:  We have Mr. Nakli here?  Is that how he pronounces his name?

THE DEFENDANT:  Yes, sir.

THE COURT:  And, Ms. Amsterdam, is your client ready to be sentenced today?

MS. AMSTERDAM:  He is, your Honor.

THE COURT:  Have you given him the presentence report?

MS. AMSTERDAM:  We've gone over and reviewed the presentence report.  We have, your Honor.

THE COURT:  Mr. Nakli, is there anything you would like me to explain to you about any of the contents of the presentence report, or are you perfectly satisfied with Ms. Amsterdam's representation in that respect?

THE DEFENDANT:  I am satisfied, your Honor.

Case 1:26-cv-01515-FB-PK    Document 1-8    Filed 03/14/26    Page 3 of 19 PageID #: 87
Case 1:98-cr-00721-FB   Document 72   Filed 09/20/11   Page 3 of 19 PageID #: 37

3

THE COURT:  All right.  Let me tell you first what I have in my sentencing file, and you tell me if there's anything that inadvertently is missing.  We have the presentence report, which is dated this past August 15th, and it indicates that the defendant was arrested way back almost two years ago, on September 29th, 1998; that he's been released on a $100,000 personal recognizance bond since that date.

I also have a report from probation dated March 2nd, this past March 2nd, advising that following or during the presentence report of the defendant on February 9th, 2000, that a urine sample was taken, that he tested positive for steroids.

Then I have Ms. Amsterdam's comprehensive and well-conceived and written letter of October 5th, requesting downward departures because of efforts at rehabilitation and extraordinary acceptance of responsibility.  And attached to Ms. Amsterdam's letter as Exhibit A are a number of supportive letters from various people, which the Court has reviewed.

Anything else I ought to have, Ms. Amsterdam?

MS. AMSTERDAM:  Not from the defendant, your Honor.

THE COURT:  Let's make our guideline calculation at page 7.  Before doing so, is there any misinformation

Case 1:26-cv-01515-FB-PK   Document 1-8   Filed 03/14/26   Page 4 of 19 PageID #: 88
Case 1:98-cr-00721-FB   Document 72   Filed 09/20/11   Page 4 of 19 PageID #: 38

4

contained in the presentence report or, in other words, can I rely upon it as being factually correct in all significant respects?

MS. AMSTERDAM:  Yes, your Honor.

THE COURT:  Yes, I can rely on it?

MR. SEIGAL:  Yes, your Honor.

THE COURT:  All right.  So we have a base offense level of 16.

Is there any disagreement about that, Ms. Amsterdam?

MS. AMSTERDAM:  No, your Honor.

THE COURT:  And we have a role adjustment of 2 levels for minor participation.  It seems like minor participation is indicated here.

You take no exception to that, Mr. Seigal?

MR. SEIGAL:  Minor participation, correct, your Honor.

THE COURT:  And you concur as well, Ms. Amsterdam?

MS. AMSTERDAM:  Yes, your Honor.

THE COURT:  That brings us to an adjusted offense level for Count 1 of 14.  A multiple count adjustment for the other counts does not change the adjusted offense level. And with 2 levels off for acceptance of responsibility, we have a total offense level of 12.

Do we all agree to that?  Ms. Amsterdam?

Case 1:26-cv-01515-FB-PK    Document 1-8    Filed 03/14/26    Page 5 of 19 PageID #: 89
Case 1:98-cr-00721-FB   Document 72   Filed 09/20/11   Page 5 of 19 PageID #: 39

5

MS. AMSTERDAM:  Yes, your Honor.

THE COURT:  Mr. Seigal?

MR. SEIGAL:  Yes, your Honor.

THE COURT:  Therefore, in the absence of a downward departure, the sentencing guidelines provide for a range of incarceration of from 10 to 16 months, with the possibility of a split sentence.

Ms. Amsterdam, at this time, do you wish to supplement your submission in respect to your downward departure application?

MS. AMSTERDAM:  I would, very briefly, your Honor, and I appreciate your Honor's kind remarks about the submission that my office sent in.  I would just want to start with one thing, which was that your Honor referred to a positive drug test for steroid use.

THE COURT:  You report that that could be a carry-over from his prior days.

MS. AMSTERDAM:  That's correct, your Honor.  In fact, now that I know more about steroids from the Olympics than I ever want to know, it does appear that steroids can remain in the blood system for as long as two years.  So I note that for purposes of addressing that issue herein.

Very briefly, your Honor, I have moved for a downward departure based on rehabilitation efforts and on extraordinary acceptance of responsibility.  I would add,

Case 1:26-cv-01515-FB-PK   Document 1-8   Filed 03/14/26   Page 6 of 19 PageID #: 90
Case 1:98-cr-00721-FB   Document 72   Filed 09/20/11   Page 6 of 19 PageID #: 40

6

just to begin, that I do think that the offense itself and Mr. Nakli's role in it might very well have constituted outside the heartland conduct, in that it appears that it's undisputed that the defendant did this as a favor, namely he transported garbage bags of steroids for a friend, without any monetary gain to himself.

Mr. Nakli, as your Honor I think remembers, because we made a request that he be able to return to Syria to participate in the world body building championship, has been a trainer and body builder for years.  And the steroids at issue in this case, while I don't countenance or attempt in any way to minimize the destructive nature of steroids, it was clear that these products were aimed at people who were working out in gyms, who were attempting to benefit from their use.  Probation recommended a minor role because he did not receive any money or personal gain.

The letters herein suggest a couple of things, one I really want to stress, which is, I think his acceptance of responsibility has been extraordinary.  Your Honor pointed out that it's been two years since he was arrested.  I don't know if your Honor recalls the circumstances under which he was arrested, but he learned via the proverbial grapevine that there was a warrant for him while he was living in Syria with his family and had a business interest there.  He contacted a lawyer, namely myself, and he agreed to

Case 1:26-cv-01515-FB-PK    Document 1-8    Filed 03/14/26    Page 7 of 19 PageID #: 91
Case 1:98-cr-00721-FB   Document 72   Filed 09/20/11   Page 7 of 19 PageID #: 41

7

voluntarily surrender himself, not only to the court system but to the United States, which was his adopted or he hoped for adopted country.  I think that many people can't find their way to go to New Jersey, to New York, let alone when they have a whole life elsewhere to come back and face charges, I think is quite commendable.

In terms of his rehabilitation, he's out of the body building business, so to speak.  He has started his own business, which has been in the red, as I said in my letter.  But he's also -- and I had an opportunity to see it.  He's also gotten several acting roles.  There's a new t.v. show on called "Dateline" on NBC about a reporter.  Mr. Nakli has a bit part as the sports editor.  He is seen at various times in the scenes, but I think next week or the week after, he actually has a featured part, in which he gets to speak.  I don't know if Nakli is really the name that I would continue under if I was looking for stardom, but be that as it may, I think that there's --

THE COURT:  He doesn't look like a matinee idol to me.

MS. AMSTERDAM:  Laith Nakli -- you don't really see it up there in lights.  But nonetheless, it would appear that through his role in this case, that his conduct, while it may not technically rise under the case law as abhorrent, is certainly unusual for who he is as a person.  He has done

Case 1:26-cv-01515-FB-PK    Document 1-8    Filed 03/14/26    Page 8 of 19 PageID #: 92
Case 1:98-cr-00721-FB   Document 72   Filed 09/20/11   Page 8 of 19 PageID #: 42

8

everything from surrender himself back to this country to face the court process, to rehabilitate himself, to find a new direction to go in, and I most respectfully request that he -- that the Court depart so as not to serve a term of incarceration.

THE COURT:  Mr. Seigal, you can comment on the downward departure.  You're not foreclosed under the law from doing that.  And to just give you some thoughts in that respect, you do have a long period of time from the date of arrest until the date of sentence.  It seems as if he has turned his life around.  The steroid situations are criminal situations to be sure but nonetheless, he seems to have recognized that.

This is a case that suggests that post-arrest rehabilitation is worthy of consideration, and I'm also impressed by the fact that he came back voluntarily.  From the information that I gleaned from the presentence report, he did not have to do that.  Courts are always impressed by that type of acceptance of responsibility.  I think the combination of those two factors suggest that incarceration would not be the appropriate sentence here, and I invite your comments in that respect.

MR. SEIGAL:  Your Honor, I understand what you're saying.  I want to say a few things, really just to make sure that things are clear for the Court to make its

Case 1:26-cv-01515-FB-PK    Document 1-8    Filed 03/14/26    Page 9 of 19 PageID #: 93
Case 1:98-cr-00721-FB   Document 72   Filed 09/20/11   Page 9 of 19 PageID #: 43

9

decision.  With regard to the extended time, I think a lot of that was due to Ms. Amsterdam's very, very busy trial schedule.  We had to postpone many, many times.

As far as his post-conviction rehabilitation, I'm not really going to address that, your Honor.  I'm not taking a position on that.

I do want to say a couple of things about extraordinary acceptance of responsibility.  I do think it's far for the Court to know that Mr. Nakli was about to go to trial.  We were in fact five days from the trial date when he pled guilty.  The government did go through a lot of effort to prepare the trial.

THE COURT:  I'm not fully aware of that, so it's perfectly appropriate for you to comment.

MR. SEIGAL:  And the government was prepared to put on the evidence on the four counts that the defendant pled guilty to, and the defendant did plead guilty to --

THE COURT:  But he did return to face trial.

MR. SEIGAL:  That is correct, your Honor, he did return to be -- well, at least to -- I think it was an arrest on a complaint.  I don't know if it was --

THE COURT:  And he's also in a situation where he's subject to removal from the country.

MR. SEIGAL:  It's possible, your Honor.

THE COURT:  So he winds up from whence he came,

Case 1:26-cv-01515-FB-PK    Document 1-8    Filed 03/14/26    Page 10 of 19 PageID #:
Case 1:98-cr-00721-FB    Document 72    Filed 09/20/11    Page 10 of 19 PageID #: 44

10

and it's questionable whether the government would have sought extradition from Syria in this situation.

MR. SEIGAL:  I don't dispute any of that, your Honor, but I did want the Court to understand that it was -- we were in on a Wednesday, I believe, and trial was going to begin on Monday.

THE COURT:  It's good to hear that.

MR. SEIGAL:  So that I think affects the extraordinary acceptance, not necessarily the post-conviction.

And as far as being out of the heartland, I really don't think it is.  As the reports shows, Mr. Nakli, on more than one occasion, picked up large amounts of steroids. This case was not "nickel and dime," so to speak.

THE COURT:  I agree.  I don't think abhorrent behavior is necessarily warranted here because of his continued activity, and Ms. Amsterdam is not suggesting that.

MR. SEIGAL:  I understand, your Honor.

THE COURT:  We're talking about post-arrest.

MR. SEIGAL:  I understand that, your Honor, but I just wanted to, as far as the nature of the conduct, make it clear --

THE COURT:  He's going to be punished.  He's going to be punished but --

Case 1:26-cv-01515-FB-PK    Document 1-8    Filed 03/14/26    Page 11 of 19 PageID #:
Case 1:98-cr-00721-FB   Document 72   Filed 09/20/11   Page 11 of 19 PageID #: 45

11

MR. SEIGAL:  I wanted to make that clear.  The person, Oscar Ardinam (ph), to whom -- he was helping this person by taking money to another person who was selling the steroids.  This is somebody who was a very, very significant steroids dealer.  In fact, Mr. Genser here in the courtroom handled his case.

THE COURT:  I think we sentenced him -- we sentenced him already.

MR. SEIGAL:  He has been sentenced, yes, your Honor.

THE COURT:  We treated -- we treated that quite seriously under the circumstances.

MR. SEIGAL:  Understood, your Honor.  So simply -- obviously, the government did not put in a written response because I only wanted to make a few comments to the Court, to consider the whole mix.  Other than that, I really don't have much else to say on it.

THE COURT:  When you think of all the matters that we see in the Court, when we get a steroid situation, not to sanction its criminal content, somehow by comparison, I'd rather have these types of crimes than a lot of the other ones that I have to manage.

Do you wish to say anything before you're sentenced?  You have the right to do so.

THE DEFENDANT:  Yes, your Honor.  Your Honor, I

Case 1:26-cv-01515-FB-PK    Document 1-8    Filed 03/14/26    Page 12 of 19 PageID #:
Case 1:98-cr-00721-FB   Document 72   Filed 09/20/11   Page 12 of 19 PageID #: 46

12

look back at what I did and how foolish I was, the mistake that I made. I regret it. I want to apologize to you, your Honor, and to my family and friends and people who care. I want to apologize to the country that I love more than anything in my life. I love America. I want to apologize, and I assure you it will never, ever happen again. It was a mistake and it will never, ever happen again. Thank you, your Honor.

THE COURT: All right, I'm not going to put you in jail. I'm going to downwardly depart here for a combination of circumstances. I am impressed by the fact that you did come back to this country voluntarily to face trial, that there indeed was the prospect of trial. There is no plea agreement that you had entered into before you did that. I can understand why people in your situation might seriously contemplate wishing to run the risks of a trial. In this particular case, you knew that there were consequences that would flow from going to trial or not going to trial or being sentenced ultimately, and you came back to this country.

I think when you add that with the fact that you have obviously recognized the fact that steroids are a problem and not to be countenanced, you have accepted responsibility in that respect as well and your rehabilitation has been noteworthy. It's hard to put an

Case 1:26-cv-01515-FB-PK    Document 1-8    Filed 03/14/26    Page 13 of 19 PageID #:
Case 1:98-cr-00721-FB   Document 72   Filed 09/20/11   Page 13 of 19 PageID #: 47

13

actor in jail; it's hard to get work as an actor. But the combination of those two factors, even if neither of them would in this situation perhaps standing alone rise to a separate basis for downward departure, certainly in combination, they do, in the Court's opinion.

So I'm going to sentence you to a period of probation for three years. In recognition of the fact that you need to be punished, though, I'm going to do some other things as well. You'll be subject to six months' home confinement and you'll have to pay for the costs of home confinement, which runs about $4 to $5 a day, so you can figure it about $200 or so, which is what the costs will be for that.

I'm going to provide also that you give 200 hours of your time to community service, also as a condition of probation. I think that if Probation can place you in a situation where you can spread the message that steroids constitute criminal activity, dealing in steroids, that would be helpful maybe to other people who might be contemplating that type of thing, especially in the body building world. Hopefully, your community service will give you an opportunity to do that, though I can't guarantee that that will come to pass.

I'm going to require you to pay a fine of $3,000. I think you have the wherewithal to do so, especially since

14

you have a burgeoning acting career, which you're not going to be deterred from pursuing now.  You're a young man.  You have many means of earning a living.  You have earned a living, although modest.  It's obvious to the Court that you can pay a fine of $3,000.  I'll give you a chance to pay that off at the rate of $500 a month starting one month from today, until it is fully paid off.  That will be a condition of your probation as well, the payment of a fine.

I think that the sentence I've imposed is sufficient for deterrence and punishment.  You also have to pay a special assessment.  Let's see what the right number is.  Is it $200 or is it $400.

MR. SEIGAL:  I believe it's $400.

MS. AMSTERDAM:  $400, I believe.

THE COURT:  $400?  Does this go back to the time when it was $50 or -- we're way beyond that by now.  It may come under the $50 category.

MR. SEIGAL:  According to paragraph 68 of the report, it's $400 or $100 each count.

THE COURT:  April, 1998.  I think the law was changed at about that time.

Mr. Genser, do you recall that by any chance?

MR. GENSER:  Your Honor, as long as I've been in the office, it's been $100, and I was here when this case started.  Although I don't have the exact date, I believe it

Case 1:26-cv-01515-FB-PK    Document 1-8    Filed 03/14/26    Page 15 of 19 PageID #:
Case 1:98-cr-00721-FB    Document 72    Filed 09/20/11    Page 15 of 19 PageID #: 49

15

is $100.

THE COURT:  Why do I think it was back in 1998 when it was changed?  Earlier than that?

UNIDENTIFIED SPEAKER:  It was before '98.

THE COURT:  '97?

MR. SEIGAL:  That's my recollection as well, Judge, that it was before '98.

THE COURT:  $400.  And if we're wrong, he can appeal it.

MS. AMSTERDAM:  Your Honor, on the six months of home confinement, would it be your Honor's intention or would you consider allowing the defendant out for work?

THE COURT:  It goes with the territory, but it's good to put it in the Court's judgment, in any event.  He will be allowed to work.  Probation will be monitoring that. If he's a religious person and he needs to go to church, Probation pretty much uses some good common sense.  The idea of home confinement is that he's not going to have a social life outside of the house for six months basically.

I think that covers everything.  Last, we're going to give you conditions of probation, general conditions, which you will read, Mr. Nakli, and comply with.

Last, I just want to advise that he may have some rights to appeal.  Well, he does.  He just pled to all the counts.  He didn't waive any of his rights to appeal.  So I

Case 1:26-cv-01515-FB-PK    Document 1-8    Filed 03/14/26    Page 16 of 19 PageID #:
Case 1:98-cr-00721-FB   Document 72   Filed 09/20/11   Page 16 of 19 PageID #: 50
1009

16

want you to advise him as to what his appellate rights might be and how to implement them forthwith, okay, Ms. Amsterdam?

MS. AMSTERDAM:  I will, your Honor.

THE COURT:  I think that constitutes the sentence of the Court.  There's nothing left to be done, other than to say to you that you've learned your lesson here the hard way and I'm sure you're going to profit by this experience in the long run constructively.

MR. SEIGAL:  Your Honor, just housekeeping.  He pled guilty to all the counts in (S-3), so we'd move to dismiss all counts against him in the underlying indictments.

THE COURT:  Wait a second.  He has a multiple scenario here, right?  So as far as the counts that he pled to -- let's just back up for a second.  The J and C should specifically provide that all of the -- the sentence that I've imposed will be for each count that he pled to, and it will run concurrently.

MR. SEIGAL:  All right.

THE COURT:  Okay?

MS. AMSTERDAM:  I have one last request, your Honor.  In accordance with your Honor's thinking -- well, not your thinking, your order that the defendant would pay for his home confinement, might I ask that your Honor start the $500 a month for the fine after the period of home

Case 1:26-cv-01515-FB-PK    Document 1-8    Filed 03/14/26    Page 17 of 19 PageID #:
Case 1:98-cr-00721-FB   Document 72   Filed 09/20/11   Page 17 of 19 PageID #: 51

17

confinement?

THE COURT:  All right.

MS. AMSTERDAM:  Thank you, your Honor.

THE COURT:  So when his home confinement is ended in six months' time, then the first $500 -- well, I want to make it coterminous with the three years of probation. That's why I did it this way, so it adds up to $3,000 by the time his probation ends.

MS. AMSTERDAM:  He finishes probation.

THE COURT:  So if you want to fine-tune it, why don't you just simply say that he'll have to pay $500 at the end of year one from today and $500 every six months thereafter, except the last payment will have to be $1,000. I think that should do it.

MS. AMSTERDAM:  That should do it.

THE COURT:  Unless my math is off.

Mike, does that add up?

THE CLERK:  I missed that.  The first payment to --

THE COURT:  $500 a year from today, $500 every six months after that, so it will be another $1,000 -- $1,000 by the end of year two --

MR. SEIGAL:  And then at the end of year three, $1,000.  Is that correct, Judge?

THE COURT:  So at the end of year two, he'll have

Case 1:26-cv-01515-FB-PK    Document 1-8    Filed 03/14/26    Page 18 of 19 PageID #:
Case 1:98-cr-00721-FB   Document 72   Filed 09/20/11   Page 18 of 19 PageID #: 52

18

paid $1,500.  Why don't we simply do it this way:  He'll pay -- these little -- because Mike has to make this thing up. You're making life hard for him, Ms. Amsterdam.  He pays $500 at the end of year one, all right, $1,000 -- an additional $1,000 at the end of year two, and the balance of $1,500 by the end of year three.  That adds up to $3,000.

MS. AMSTERDAM:  Thank you, your Honor.

THE COURT:  Okay?

You got it, Mike?

THE CLERK:  Yes.

MS. AMSTERDAM:  Thank you, your Honor.

THE COURT:  Thank you, Ms. Amsterdam.

* * * * * * * * *

Case 1:26-cv-01515-FB-PK    Document 1-8    Filed 03/14/26    Page 19 of 19 PageID #:
Case 1:98-cr-00721-FB   Document 72   Filed 09/20/11   Page 19 of 19 PageID #: 53

19

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

ELIZABETH BARRON                          September 20, 2011